UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARK PORTER,

    Plaintiff,

    v.

CENTRAL INTELLIGENCE AGENCY,

    Defendant.

Civil Action No. 10-050 (JEB)

## MEMORANDUM OPINION

Plaintiff Mark Porter brings this action against Defendant Central Intelligence Agency pursuant to the Freedom of Information Act, 5 U.S.C. § 552. He claims that Defendant has wrongfully withheld documents that he is entitled to under FOIA. Defendant has now moved for summary judgment. The Court has reviewed the Motion, Plaintiff's Opposition, and Defendant's Reply.

**I.    Background**

Plaintiff has filed three separate FOIA requests for the same information over the past 14 years. Although the procedural history of these requests is taken from defense evidence, as well a prior reported judicial decision, it is undisputed.[1]

    A.  The 1997 Request

On July 9, 1997, Plaintiff submitted his initial FOIA request to Defendant seeking "all reports, results of investigation, surveillance data, internal memorandum or other documents

---

[1] While Plaintiff did file an affidavit with his Opposition, it focuses primarily on Plaintiff's reasons for filing his FOIA requests in the first place -- *i.e.*, he "believe[s] the surveillance against [him] has been continual, there was huge interference in [his] life and lively hood that caused harm and impaired [his] ability to proceed in a timely manner." Opp., Ex. 1 (Affidavit of Mark Porter) at ¶ 16. Even if the Court could clearly follow what Plaintiff asserts in his affidavit, none of the assertions contradicts the material facts laid out in Defendant's attached declaration discussed herein.

concerning Mr. Mark S. Porter between the years 1986 and 1991 while Mr. Porter was employed by Bendix Field Engineering Corporation." Def's Mot. for Summary Judgment, Declaration of Delores M. Nelson at ¶ 9.

In a letter dated October 16, 1997, Defendant informed Plaintiff that, after searching relevant record systems, it had determined "that there [were] no documents available to him under FOIA." Nelson Decl. at ¶ 13. Ten days later, Plaintiff appealed this decision to the Agency Release Panel. Id. at ¶ 14. The Agency Release Panel affirmed Defendant's initial determination and informed Plaintiff by a letter dated April 1, 1998, that he had a right to seek judicial review of this determination in United States District Court. Id. at ¶ 16.

Following the 1998 letter, Plaintiff took no action for more than seven years. Porter v. Central Intelligence Agency, 579 F. Supp. 2d 121, 123 (D.D.C. 2008). Finally, on November 7, 2005, his attorney wrote to "request information" regarding the 1997 FOIA inquiry. Id. Defendant responded on May 23, 2006, by sending a copy of the 1998 letter. Id.

B. The 2006 Request

That August, Plaintiff's attorney once again appealed Defendant's 1997 search that found no documents. Nelson Decl. at ¶ 20. Defendant understood Plaintiff's appeal to be a second separate FOIA request for the same material. As such, Defendant expanded the timeframe of the original search and informed Plaintiff that it would "search for CIA originated records existing through [September 7, 2006]." Porter, 579 F. Supp. 2d at 123. Defendant's search produced one document, which it released to Plaintiff, with redactions, along with an accompanying letter on October 19, 2006. Id. at 123-24. The letter explained Plaintiff's right to appeal the determination within 45 days. Id. at 124. Instead of filing an appeal with Defendant, Plaintiff

filed an action in this District claiming that he was entitled to the requested information under FOIA and that Defendant had no basis for denying his request.  Id.

Shortly thereafter, Defendant filed a motion to dismiss or, in the alternative, for summary judgment.  Id. at 122.  Judge Gladys Kessler granted Defendant's motion for summary judgment on September 30, 2008, holding that: (1) Plaintiff's letter could not serve as an appeal of the 1998 letter because the six-year statute of limitations had run; and (2) assuming Plaintiff's May 2006 letter was a new FOIA request, he had failed to exhaust his administrative remedies.  Id. at 127, 129.  This ruling terminated that case.

    C.  The 2009 Request

On January 15, 2009, Plaintiff sent his third FOIA request to Defendant, again seeking "information regarding Mr. Mark Porter."  Nelson Decl. at ¶ 25.  After acknowledging receipt, Defendant informed Plaintiff by letter on March 27, 2009, that it interpreted his request as a "request for an updated search."  Id. at ¶ 28.  As a result, Defendant explained that it would limit its search to the timeframe from his last request, September 7, 2006, to the date of the letter, March 27, 2009.  Id.  Finally, Defendant informed Plaintiff that it would be unable to complete the process in the statutory 20-day limit, and he could treat this decision as a denial and appeal to the Agency Release Panel.  Id.  Plaintiff did not appeal at that time, so Defendant proceeded with the updated search.  Id.

Defendant's Information Management Services division is the gatekeeper for all FOIA requests made to the CIA.  Id. at ¶ 6.  Because Defendant's record systems are decentralized and compartmentalized, IMS must first determine which systems are likely to possess records responsive to a particular request.  Id. at ¶ 7-8.  An experienced IMS professional therefore analyzes each request and determines which databases to search.  Id. at ¶ 7.  The point person for

each database is then informed of the request, and he determines the best method for searching the records for responsive documents.[2] Id. Having determined the likely repositories for responsive documents, Defendant had both the National Clandestine Service ("NCS") and the Directorate of Support ("DS") perform searches by inputting Plaintiff's name, variants thereof, and Plaintiff's Social Security number into databases capable of searching by the relevant identifiers. Id. at ¶ 30. No matching records were identified. Id.

Defendant informed Plaintiff on May 28, 2009, that its updated search had failed to produce any documents additional to those related to Plaintiff's previous FOIA requests. Id. at ¶ 31. This letter also informed Plaintiff that Defendant had interpreted his request as a request for an updated search, and that Plaintiff could appeal this decision within 45 days. Id. Plaintiff appealed on the grounds that the search was inadequate. Id. at ¶ 32.

In response to Plaintiff's appeal, IMS again directed both NCS and DS to search their records for responsive documents. Id. at ¶ 34. Both components performed searches according to the identifiers and again found no matching documents. Id. As a result, Defendant informed Plaintiff on November 19, 2009, that, despite "diligent searches of the appropriate records at the appellate level," it was unable to locate any responsive documents. Id. at ¶ 35. Defendant's letter informed Plaintiff of his right to seek judicial review. Id.

Plaintiff then filed this action on January 8, 2010, claiming that: (1) Defendant had wrongfully withheld agency records from him; and (2) Defendant had not performed an adequate search pursuant to FOIA. Compl. at ¶¶ 13-14.

---

[2] A detailed explanation of the records maintenance is set out below in Section III(B).

## II. Legal Standard

Rule 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." When the sufficiency of a complaint is challenged under Rule 12(b)(6), the factual allegations presented in it must be presumed true and should be liberally construed in plaintiff's favor. Leatherman v. Tarrant Cty. Narcotics & Coordination Unit, 507 U.S. 163, 164 (1993). Where, as here, the Court must consider "matters outside the pleadings" to reach its conclusion, a motion to dismiss "must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d); see Yates v. District of Columbia, 324 F.3d 724, 725 (D.C. Cir. 2003).

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record." FED. R. CIV. P. 56(c)(1)(A). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on an element of the claim. Liberty Lobby, Inc., 477 U.S. at 248. Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits, declarations, or documentary evidence to the contrary. Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992).

FOIA cases typically and appropriately are decided on motions for summary judgment. Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Bigwood v.

United States Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007). In a FOIA case, the Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations if they are relatively detailed and when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. Sec. & Exch. Comm'n, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. Cent. Intelligence Agency, 692 F.2d 770, 771 (D.C. Cir. 1981)).

**III.     Analysis**

The FOIA, 5 U.S.C. § 552, seeks "to open agency action to the light of public scrutiny," Dep't of Air Force v. Rose, 425 U.S. 352, 372 (1976), and to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." N.L.R.B. v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978). To further this end, "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." See 5 U.S.C. § 552(a)(3)(A). If an agency denies a FOIA request, a federal district court has the authority to enjoin the agency from withholding agency records and to order the production of any agency records upon a showing that: (1) the records are in fact agency records, (2) the records have been withheld, and (3) the withholding is improper. See 5 U.S.C. §

552(a)(4)(b); Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 150 (1980). It is the burden of the agency to show that one of the three elements is not met.

There is no dispute that no applicable records were found in Defendant's searches. The question, however, is whether that is because Defendant improperly curtailed its search. Plaintiff's challenge here is to both the time restrictions Defendant placed on the search and the adequacy of the search itself.

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also Steinberg v. U.S. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994). To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search. Perry v. Block, 684 F.2d 121, 126 (D.C. Cir. 1982). In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA. Id. at 127. If the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." Truitt, 897 F.2d at 542.

A. Time Limitations

Having previously conducted searches in response to two substantively similar FOIA requests from Plaintiff, Defendant limited the search in this case to records between September 7, 2006, and March 27, 2009. Nelson Decl. at ¶ 28. This period represents the time between Plaintiff's second request and Defendant's acceptance of his third request. Because Plaintiff did not himself limit the scope of the search in his FOIA request, he now argues that Defendant has "unilaterally narrowed the scope of the search." Opp. at 10. Defendant's response on this issue

is threefold: (1) Defendant gave Plaintiff ample notice of its decision to limit the timeframe of the search; (2) Defendant's decision was reasonable; and (3) even if Defendant acted improperly, Plaintiff has failed to exhaust his administrative remedies on this issue. Reply at 7-10.

   *1. Notice of the Time Limitation*

Plaintiff twice received notice that Defendant was limiting the dates of its search. Nelson Decl. at ¶¶ 28, 31. After receiving Plaintiff's 2009 FOIA request, Defendant first informed Plaintiff in a letter dated March 27, 2009, that it understood his request as one for an "updated search." Id., Ex. 19. The letter continues: "Our updated search will be for CIA-originated documents existing from 7 September 2006, the date of our previous acceptance letter, through the date of this acceptance letter." Id. Later, as part of its final response, Defendant again informed Plaintiff of the limited timeframe of its search, stating, "Our processing included an updated search . . . from 7 September 2006 through the date of our acceptance letter . . . ." Id., Ex. 20. Plaintiff did not at any time object to Defendant's time limitation before filing this action.

Plaintiff argues that Defendant nonetheless was on notice that "Mr. Porter was seeking all information about himself not limited to time." Opp. at 16. Yet Plaintiff fails to direct the Court to any record evidence supporting this point. As the non-moving party, Plaintiff's Opposition must consist of more than mere unsupported allegations or denials. See FED. R. CIV. P. 56(e); Celotex Corp., 477 U.S. at 324. Plaintiff appears to argue that, because he did not cabin his FOIA request himself, Defendant was on notice that he did not want a limited timeframe for his search. But this argument is unpersuasive in the face of Defendant's record evidence demonstrating that it informed Plaintiff not once, but twice, that it understood his request to be a request for an updated search. Even construing the evidence in the light most favorable to

8

Plaintiff, Defendant's belief that Plaintiff had acquiesced by his silence in the scope of the search was reasonable.

### 2. Reasonableness of the Time Limitation

Even if the Court could find that Plaintiff's silence here did not signal agreement in the scope of the search, Defendant's decision to limit the time period was independently reasonable, given that this was Plaintiff's third request for the same information. When a plaintiff has submitted multiple FOIA notices for largely the same information, courts have found agencies' decisions to limit the timeframe of the searches not unreasonable. See Rein v. U.S. Patent & Trademark Office, 553 F.3d 353, 363-64 (4th Cir. 2009) (finding that agency's decision to use date of prior similar requests as starting point for new similar request "not inherently unreasonable" and "a practical common-sense approach"). Here, Plaintiff had sent two similar FOIA requests in the past 14 years. Nelson Decl. at ¶¶ 9, 17. In each case, the agency had searched its records for the information sought by Plaintiff. Id. at ¶¶ 13, 22. Plaintiff has submitted neither evidence nor persuasive argument to support its position that the time limitation was unreasonable or that documents not previously located might crop up on this occasion. Defendant, therefore, has carried its burden that the time limitation was reasonable in response to Plaintiff's third similar request. As such, there is no genuine issue as to this material fact, and summary judgment is appropriate, even when construing the evidence most favorably for the Plaintiff.

### 3. Exhaustion

Yet, were this Court to find that the search was improperly limited in time, Plaintiff would still not prevail. His challenge would fail because he has not exhausted his administrative remedies on this issue.

Plaintiffs are generally required to exhaust their administrative remedies before filing a suit in federal court. See Hidalgo v. FBI, 344 F.3d 1256, 1258 (D.C. Cir. 2003); Oglesby v. United States Dep't of the Army, 920 F. 2d 57, 61 (D.C. Cir. 1990). Although exhaustion is not a jurisdictional requirement, Wilbur v. CIA, 355 F.3d 675, 677 (D.C. Cir. 2004), a court may nonetheless dismiss a case if a plaintiff fails to exhaust his administrative remedies if "the purposes of exhaustion" and the "particular administrative scheme" support denying judicial review to the plaintiff. Hidalgo, 344 F.3d at 1259; see also Oglesby, 920 F.2d at 61 ("[C]ourts usually look at the purpose of exhaustion and the particular administrative scheme in deciding whether they will hear a case or return it to the agency for further processing.") (citing McKart v. United States, 395 U.S. 185, 193 (1969)). The purposes of exhaustion include "preventing premature interference with agency processes, affording the parties and the courts the benefit of the agency's experience and expertise, or compiling a record which is adequate for judicial review." Hidalgo, 344 F.3d at 1259 (internal citations omitted).

In this case, FOIA's specific administrative procedures, clear deadlines for processing requests, and detailed provisions on appeal all suggest that FOIA is an administrative scheme that not only requires exhaustion of administrative remedies, but, moreover, permits a court to dismiss a case when a plaintiff fails to exhaust his administrative remedies. Id. at 1259 (citing Sinito v. United States Dep't of Justice, 176 F.3d 512, 516 (D.C. Cir. 1999)); Oglesby, 920 F.2d at 61-62 (citing Dettmann v. United States Dep't of Justice, 802 F.2d 1472, 1477 (D.C. Cir. 1986)). Indeed, "[i]t goes without saying that exhaustion of remedies is required in FOIA cases." Spannaus v. U.S. Dep't of Justice, 824 F.2d 52, 58 (D.C. Cir. 1987)

Here, Defendant requires appeals to be filed with the Agency Release Panel within 45 days of the agency's initial determination. Wilbur, 355 F.2d at 677 (citing 32 C.F.R. § 1900.42).

And Plaintiff did, in fact, appeal the agency's final determination that no matching records were found. But Plaintiff limited his appeal to the "adequacy of the search," Nelson Decl., Ex. 21, which Defendant could reasonably infer covered only the methods, not the timeframe, of the search. At no point during the appeal process did Plaintiff ever aver that he was appealing the timeframe of the search. FOIA's detailed administrative scheme required Plaintiff to exhaust his administrative remedies on this issue. Because he failed to do so, summary judgment on this issue is consistent with the purposes of exhaustion and FOIA's detailed administrative scheme.

B. Adequacy of the Search Itself

Having found the timeframe of the search reasonable or, in the alternative, not ripe for review, the Court now turns to Defendant's argument that the content of the search itself was adequate. Plaintiff argues that Defendant has not carried its burden to submit record evidence with enough detail to support summary judgment. Opp. at 11.

The adequacy of an agency's search for documents requested under FOIA is judged by a standard of reasonableness and depends upon facts of each case. Weisberg v United States Dep't of Justice, 755 F.2d 1476, 1485 (D.C. Cir 1984). Defendant must demonstrate beyond a material doubt that its search "was reasonably calculated to uncover all relevant documents." Truitt, 897 F.2d at 542. Defendant may satisfy this burden by submitting declarations that explain in reasonable detail the scope and method of the agency's search. Perry, 684 F.2d at 126.

To meet its burden, Defendant submitted the Declaration of Delores M. Nelson, Chief of the Public Information Programs for IMS at the CIA. She first sets forth the agency's rationale for the direction of the search. Id. at ¶ 29. Nelson explains that Defendant's IMS division is the gatekeeper for all FOIA requests made to the CIA. Id. at ¶ 6. Because Defendant's record systems are decentralized and compartmentalized, IMS must first determine which systems are

likely to possess records responsive to a particular request. Id. at ¶¶ 7-8. Once the likely databases were identified, a point person for each database was informed of the request and determined the best method for searching those records for responsive documents. Id. at ¶ 7.

In this case, IMS determined that responsive records, if any, would reside in the National Clandestine Service or the Directorate of Support because these components cover the circumstances in which an individual is likely to come into contact with Defendant. Id. at ¶ 29. NCS maintains records "relating to foreign individuals who are of foreign intelligence or foreign counterintelligence interest to the CIA, either because of their actual, apparent, or potential association with foreign intelligence or counterintelligence activities, or because they are of actual or potential use to the CIA." Id. DS maintains "records relating to current and former applicants for CIA employment; CIA staff and contract employees; personal services independent contractors and industrial contractors; military and civilian personnel detailed to the CIA; individuals of security interest to CIA; persons of, or contemplated for, substantive affiliation with, or service to, the CIA; persons on whom the CIA has conducted or is conducting an investigation; and federal, civilian, and military personnel with whom the CIA conducts liaison." Id.

Having determined the likely databases for responsive documents, Defendant then searched both NCS and DS by inputting Plaintiff's name, variants thereof, and Plaintiff's Social Security Number into databases. Id. at ¶ 30. These databases are capable of searching by the relevant identifiers. Id. The searches resulted in no matching documents. Id.

The Nelson Declaration therefore lays out in detailed fashion: (1) the files that were searched; (2) the reasons for searching those files; (3) the search terms employed; and (4) the search method used. In response, Plaintiff argues that, because Defendant previously produced

12

one document under a similar FOIA request, the absence of that document in response to this request demonstrates that the search was too limited in scope. Opp. at 18. But Plaintiff fails to recognize that, given the more recent timeframe of the search, it is unsurprising that this older document was not uncovered. In addition, the fact that responsive documents once existed does not mean that they remained in Defendant's custody or that Defendant had a duty to retain them, and the agency's failure to turn up a particular document -- or mere speculation that as yet uncovered documents might exist -- will not undermine an otherwise adequate search. See Wilbur, 355 F.3d at 678. Plaintiff, moreover, does not argue that other specific databases should have been searched; even if he had, there is no requirement that an agency search every record system in response to a FOIA request, but only those records that are likely to have responsive documents. Oglesby, 920 F.2d at 68. Ultimately, Plaintiff never claims what documents he even believes might exist.

As a result, even when construing the evidence in the light most favorable to Plaintiff, the Court finds that there is no genuine issue as to the adequacy of the search. The Nelson Declaration makes clear that the search was reasonable and thorough both in time and method. Summary judgment is therefore appropriate in this case.

**IV.    Conclusion**

Because there are no genuine issues as to any material fact, the Court ORDERS that Defendant's Motion for Summary Judgment is GRANTED.

**SO ORDERED**.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: April 21, 2011